UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK GELOW, et al.,

        Plaintiffs,

   v.

CENTRAL PACIFIC MORTGAGE
CORPORATION, et al.,

        Defendants.

                               /

NO. CIV. S-07-1988 LKK/KJM

O R D E R

    Plaintiff Mark Gelow and ten other individuals (collectively "Plaintiffs") bring the present action against their former employer, Central Pacific Mortgage Corporation[1] ("CPM"); its subsidiary, Ivanhoe Financial, Inc. ("Ivanhoe"); and several executive officers of the two companies, including John Courson ("Courson"), John Cassell ("Cassell"), and Ed Fuchs ("Fuchs") (collectively "Defendants"). Plaintiffs seek recovery on numerous

---

[1] Cassell and Fuchs point out that this is a misnomer. Their former employer was, in actuality, Central Pacific Mortgage Company.

1

grounds, including violation of the Racketeering Influenced and Corrupt Organizations Act and numerous state law claims. Pending before the Court is defendants Cassell's and Fuchs's motion to dismiss these claims. For the reasons stated below, the Court now denies the motion.

## I. Allegations and Background[2]

Defendants CPM and Ivanhoe existed as mortgage loan companies until their demise in early 2007. During the times relevant to the complaint, either CPM or Ivanhoe employed Plaintiffs individually as branch managers. As part of their employment of Plaintiffs, CPM and Ivanhoe provided employee benefits and pension plans.

Each branch had an account containing all of the net profits for that branch. Plaintiffs made monthly salary withdrawals from these accounts. Plaintiffs also made withdrawals from the accounts for various other expenses, including vacation, illness, disability, and retirement.

For a period of over seven years, Defendants Courson, Cassell, and Fuchs represented to Plaintiffs the availability of the money in the accounts for the aforementioned purposes. Courson, Cassell, and Fuchs also repeatedly stated that the accounts were not accessible to anyone other than the respective branch manager associated with each individual account. Defendants made written monthly representations as to the

---

[2] All allegations originate from Plaintiffs' complaint.

2

balances and accessibility of the accounts and sent these representations to Plaintiffs via the U.S. Postal Service and the Internet.

On or about February 26, 2007, CPM and Ivanhoe informed Plaintiffs of the companies' closures. Defendants also informed Plaintiffs at this time that the funds in each of the accounts were no longer available. Consequently, Plaintiffs filed this action alleging violation of ERISA, violation of RICO, fraud, conversion, breach of fiduciary duty, and breach of contract.

## II. Standard for Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

In order to survive a motion to dismiss for failure to state a claim, Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1974 (2007). While a complaint need not plead "detailed factual allegations," the factual allegations it does include "must be enough to raise a right to relief above the speculative level." Id. at 1964-65.

As the Supreme Court observed, Federal Rule of Civil Procedure 8(a)(2) requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. Id. at 1965 n.3. Though such assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. Id. "The pleading must contain something more . . . than . . . a

statement of facts that merely creates a suspicion [of] a legally cognizable right of action." Id. at 1965 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure, § 1216, pp. 235-36 (3d ed. 2004)).[3]

On a motion to dismiss, the Court accepts the allegations within the complaint as true. See Cooper v. Pate, 378 U.S. 546, 546 (1964). The non-moving party receives the benefit of every reasonable inference drawn from the "well-pleaded" allegations of its complaint. See Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). In general, the complaint is construed favorably to the pleader. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Harlow v. Fitzgerald, 457 U.S. 800 (1982). That said, the court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

### III. Analysis

Defendants Cassel and Fuchs have moved to dismiss the plaintiffs' second cause of action, for RICO violations, and plaintiffs' third, fourth, fifth, and sixth causes of action, on the basis of ERISA preemption. For the reasons provided herein, the court denies the motion.

---

[3] The holding in Twombly explicitly abrogates the well established holding in Conley v. Gibson that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45-46 (1957); Twombly, 127 S. Ct. at 1968.

4

## A. RICO Claims

18 U.S.C. § 1962 provides the basis for civil liability under RICO. <u>Turner v. Cook</u>, 362 F.3d 1219, 1228 (9th Cir 2004). Section 1962(a) imposes liability for the use or investment in foreign or interstate commerce of income derived from a pattern of racketeering activity. 18 U.S.C. § 1962(a). Section 1962(c) imposes liability on anyone involved in an "enterprise" affecting foreign or interstate commerce which conducts its business through a pattern of racketeering activity.[4] 18 U.S.C. § 1962(c). The Supreme Court noted in <u>Sedima v. Imrex Co.</u>, 473 U.S. 479 (1985), that a § 1962(c) claim requires four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."[5] <u>Sedima</u>, 473 U.S. at 496.

In order to state a claim under either § 1962(a) or (c), a plaintiff must plead facts sufficient to establish a "pattern of racketeering activity." 18 U.S.C. § 1962(a), (c); <u>see also</u> <u>Schreiber Distrib. Co. v. Serv-Well Furniture Co.</u>, 806 F.2d 1393, 1398 (9th Cir. 1986). RICO's requirement of a pattern requires the occurrence of certain "predicate acts" that cumulatively amount to a continuing threat of racketeering activity. <u>H.J. Inc. v. Nw. Bell. Tel. Co.</u>, 492 U.S. 229, 240

---

[4] Plaintiffs do not specifically allege what sections of 1962 Defendants violated. However, § 1962(b) pertains to the "collection of unlawful debt" and appears inapplicable to facts alleged in the complaint. 18 U.S.C. § 1962(b).

[5] While Defendants do not concede the existence of either "conduct" or "an enterprise," they do not dispute Plaintiffs' establishment of either requirement in their motion.

(1989).  Predicate acts involve chargeable or indictable conduct punishable under a number of criminal statutes.  Sedima, 473 U.S. at 488 (citing 18 U.S.C. § 1961(1)).

Within RICO's definition of a pattern, courts have further defined the concept of continuity, referring to the concepts of "closed-ended" and "open-ended" continuity.  See H.J. Inc., 492 U.S. at 241; Howard v. Am. Online, 208 F.3d 741, 750 (9th Cir. 2000); Server v. Alaska Pulp Corp., 978 F.2d 1529, 1535-36 (9th Cir. 1992).  Closed-ended continuity refers to a period of past conduct occurring over a considerable length of time, while open-ended continuity refers to a period of conduct beginning in the past and carrying with it a threat of being repeated in the future.  H.J. Inc., 492 U.S. at 241.  With respect to closed-ended continuity, courts have demonstrated reluctance to establish a "hard and fast, bright line" rule.  Allwaste Inc. v. Hecht, 65 F.3d 1523, 1528 (9th Cir. 1995).  However, courts recognize that such activities must equate to repeated criminal conduct, H.J. Inc. 492 U.S. at 242, or occur over a significant time period, id.; Allwaste, 65 F.3d at 1528.

The Ninth Circuit gives a generous reading to § 1962's pattern requirement.  Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1469 n.1 (9th Cir. 1987).  In cases of closed-ended continuity, the Ninth Circuit has held that predicate acts carrying out a single scheme or occurring over a short period of time meet § 1962's pattern requirement.  See Ticor Title Ins. Co. v. Florida, 937 F.2d 447,

1  450-51 (9th Cir. 1991) (holding three forgeries over thirteen-
2  month period to secure lien release sufficient to constitute
3  pattern of racketeering activity even when subsequent lien
4  releases were obtained legitimately); Sun Sav. & Loan Ass'n v.
5  Dierdorff, 825 F.2d 187, 190-94 (9th Cir. 1987) (holding four
6  predicate acts of mail fraud occurring over six-month period
7  sufficient to constitute pattern of racketeering activity); Cal.
8  Architectural Bldg. Prods., Inc., 818 F.2d at 1469 (holding
9  multiple predicate acts of fraud targeting multiple victims over
10 five-month period sufficient to satisfy RICO's pattern
11 requirement).  Furthermore, the Ninth Circuit has found closed-
12 ended continuity when a threat ceases to exist due to the
13 closure of a business.  See Ikuno v. Yip, 912 F.2d 306, 309 (9th
14 Cir. 1990) (holding two filings of false annual reports
15 sufficient to constitute pattern even when company associated
16 with reports ceased doing business).

17       Defendants argue that Plaintiffs fail to plead sufficient
18 facts to establish a pattern of racketeering activity under
19 either § 1962(a) or (c).  Plaintiffs' complaint does not allege
20 that Defendants continue to pose any future threat with respect
21 to their alleged criminal activity.  See H.J. Inc., 492 U.S. at
22 241.  The Court therefore evaluates Plaintiffs' RICO claims by
23 determining whether or not the allegations of the complaint
24 sufficiently establish closed-ended continuity needed for a
25 pattern of racketeering activity.  See, e.g., H.J. Inc, 492 U.S.
26 at 240.

1  Plaintiffs allege in their complaint that Defendants
2 repeatedly used the U.S. Postal Service, and telephone, fax, and
3 Internet communications to perpetuate a scheme depriving
4 plaintiffs of the funding of the individual branch manager
5 accounts.  Such activities constitute predicate acts under §
6 1961.  See § 1961 (listing embezzlement, mail fraud, and wire
7 fraud); see also Sun Sav. & Loan Ass'n v. Dierdorff, 825 F.2d
8 186, 191 (9th Cir. 1987).  This conduct occurred for a period of
9 approximately seven years.  Plaintiffs' complaint alleges that
10 they relied on these representations and opted not to withdraw
11 the funding from their respective branch manager accounts before
12 CPM's and Ivanhoe's closure.  While such activity, if criminal,
13 terminated upon the closure of CPM and Ivanhoe, this fact does
14 not automatically preclude the existence of continuity
15 sufficient for a pattern of racketeering activity.  See Sun Sav.
16 & Loan Ass'n, 825 F.2d at 194 n.5.  Because the threat of
17 continuing activity existed during the alleged seven-year period
18 in which these predicate acts occurred, Plaintiffs' complaint
19 appears to allege facts sufficient to resist Defendants' motion
20 to dismiss Plaintiffs' RICO claims.  See id.
21  Defendants counter that such circumstances do not equate to
22 a pattern of racketeering activity because they constituted a
23 "single scheme" aimed at delaying the demise of CPM and Ivanhoe,
24 which Defendants characterize as a "single act."  Defendants
25 primarily rely on McColm v. Restoration Group, Inc., 2007 U.S.
26 Dist. LEXIS 36478 (E.D. Cal. May 18, 2007), and Gamboa v. Velez,

457 F.3d 703 (7th Cir. 2006), to support this proposition.

In McColm, the court dismissed plaintiff's civil RICO claim based on her failure to specify more than one predicate act under § 1961. McColm, 2007 U.S. Dist. LEXIS 36478, at *16-*18. In dicta, the court discussed how the continuity element might be met:

> When . . . a complaint explicitly presents a distinct and non-reoccurring scheme with a built-in termination point and provides no indication that the perpetrators have engaged or will engage in similar misconduct, the complaint does not sufficiently allege continuity for § 1962(c) purposes even if the purported scheme takes several years to unfold, involves a variety of criminal acts, and targets more than one victim.

Id. at *23 (quoting Gamboa, 457 F.3d at 709).

Assuming arguendo, the McColm court correctly stated the rule applied in this Circuit, Plaintiffs' RICO claim is factually distinguishable from McColm and Gamboa. In its discussion, the McColm court assumed the existence of two predicate acts directed at a single victim over the course of nine months. Id. at *20-*21. Here, Plaintiffs' complaint covers a period of over seven years containing allegations of multiple instances of mail and wire fraud targeting eleven former branch managers.

The facts alleged in Plaintiffs' complaint also differ from those presented in Gamboa. There, the plaintiff, a bar owner, alleged Chicago police officers conspired to frame him for the killing of a patron. Gamboa, 457 F.3d at 704. After the true

9

killers were found and convicted, the plaintiff alleged violation of § 1962(c) on the basis that the police had committed several predicate acts over the course of several years in order to frame plaintiff and four alleged accomplices for the murder of the patron. Id. at 704-05.

On an interlocutory appeal, the Seventh Circuit held that such facts failed to state a claim under § 1962(c). Id. at 710-11. Despite the fact that the alleged scheme involved multiple actors and victims and occurred over a number of years, the Gamboa court based its decision on the fact that the alleged scheme, if true, had a definitive and "built in" ending point. Id. at 708. At this point, the alleged scheme achieved its objective, and the threat of future criminal activity no longer existed. Id.; see also Roger Whitmore's Auto. Servs., Inc. v. Lake County, Ill., 424 F.3d 659, 673-74 (7th Cir. 2005) (holding closed-ended continuity did not exist when alleged pattern of racketeering activity occurred with purpose of funding single political campaign).

Here, Plaintiffs present a scenario with no such built-in termination point. According to the complaint, the Defendants' alleged fraudulent scheme arose with the objective of keeping both CPM and Ivanhoe viable for as long as possible. Unlike Gamboa, such a scheme is not one where there is a necessary termination point or final act where Defendants' efforts were to culminate. Gamboa, 457 F.3d at 709. Instead, CPM and Ivanhoe simply went out of business, which does not preclude the

existence of closed-ended continuity.  See Ikuno, 912 F.2d at 309.  Defendants cite nothing to suggest that the scheme alleged by the plaintiffs contains the same sort of "built-in termination point" detailed in Gamboa.  Gamboa, 457 F.3d at 709.

The Court therefore finds that Plaintiffs' complaint alleges sufficient facts to resist Defendants' motion to dismiss Plaintiffs' RICO claims. See Twombly, 127 S. Ct. at 1974. Accordingly, the defendants' motion to dismiss this cause of action must be denied.

**B. ERISA Preemption**

Plaintiffs' state law claims include breach of contract, breach of fiduciary duty, fraud, and conversion. Defendants seek dismissal premised on ERISA preemption.  For the reasons stated herein, the court denies the defendants' motion as to these claims.

First, Plaintiffs' breach of contract claim is directed only against CPM and Ivanhoe.  Plaintiffs allege they entered into written contracts with CPM and Ivanhoe regarding the distribution and control of profits to the individual branch accounts; however, they do not allege that Cassell and Fuchs were parties to these agreements.  Cassell and Fuchs therefore have no standing to contest this claim as it addresses only the conduct of defendants CPM and Ivanhoe.  See McGowan v. Maryland, 366 U.S. 420, 429-30 (1961); see also Warth v. Seldin, 422 U.S. 490, 501 n.12 (1975).  Accordingly, defendants Cassell's and Fuchs's motion to dismiss with respect to Plaintiffs' breach of

1  contract claim on this basis must be denied.
2      Turning to the remaining state law claims for breach of
3  fiduciary duty, fraud, and conversion, 29 U.S.C. § 1144(a)
4  provides that ERISA preempts both state laws and claims based on
5  such laws insofar as such laws and claims relate to an employee
6  benefit plan falling under ERISA's protection.  Id.  Plaintiffs
7  argue that they may plead both state law and ERISA claims in the
8  alternative.  While correct, see Fed. R. Civ. P. 8(e)(2);
9  McCalden v. Cal. Library Ass'n, 955 F.2d 1214, 1219 (9th Cir.
10 1990); Molsbergen v. United States, 757 F.2d 1016, 1019 (9th
11 Cir. 1985), this is only true if one alternative claim is not
12 barred as a matter of law. See Sidebotham v. Robinson, 216 F.2d
13 816, 831 (9th Cir. 1955) (requiring violation of legal right for
14 entitlement to relief).  Turning to the issue of preemption, the
15 first question is whether the plan at issue is one governed by
16 ERISA.  If so, then Plaintiffs' state law claims are preempted
17 under § 1144(a).
18     ERISA defines "employee welfare benefit plan" as any
19 benefits plan established for one of many purposes, including
20 surgical, medical, hospital, accident and sickness benefits;
21 vacation pay; and death, unemployment, or long-term disability
22 benefits.  29 U.S.C. § 1002(1).  ERISA further defines "employee
23 pension benefit plan" as any plan providing retirement benefits
24 or termination pay.  29 U.S.C. § 1002(2)(A)(i), (ii).  To
25 qualify as an employee benefits plan, the accounts at issue must
26 demonstrate an ongoing administrative structure and allow

reasonable persons to identify and distinguish the plan's beneficiaries, intended benefits, funding source, and the procedures beneficiaries utilize to receive benefits. Winterrowd v. Am. Gen. Annuity Ins. Co., 321 F.3d 933, 938-39 (9th Cir. 2003).

ERISA's preemptive provision is deliberately broad as a means to bring exclusively within federal control the regulation of pension and welfare plans. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987). Thus, ERISA preempts state law claims if such claims are brought as an attempt to recover benefits owed under a plan governed by ERISA. Crull v. Gem Ins. Co., 58 F.3d 1386, 1390 (9th Cir. 1995); see, e.g., Briscoe v. Fine, 444 F.3d 478, 500 (6th Cir. 2006) (preempting state law conversion claim); Nevill v. Shell Oil Co., 835 F.2d 209, 212 (9th Cir. 1987) (preempting state law fraud claim); Scott v. Gulf Oil Corp., 754 F.2d 1499, 1506 (9th Cir. 1983) (preempting state law claim for breach of fiduciary duty). Relying on such a basis, Defendants move to dismiss each of Plaintiffs' state law claims on the grounds of preemption.[6]

---

[6] In their reply, defendants Cassell and Fuchs argue that, according to Plaintiffs' complaint, ERISA is the "sole basis pled by plaintiffs for this Court's jurisdiction and venue." Reply at 2:10-13. Therefore, if the Plaintiffs allege that the plans at issue are not ERISA plans, then the court would have no jurisdiction. However, Plaintiffs allege within the same section cited by Cassell and Fuchs that jurisdiction and venue also rest on 28 U.S.C. §§ 1331 (the Plaintiffs appear to mistakenly label this section "1131") and 1391, respectively. Simply put, if the funds in issue are not ERISA plan funds, then plaintiffs' RICO claims provide federal jurisdiction.

While the question of ERISA preemption is one of law, see Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 874 (9th Cir. 2001), whether an ERISA plan exists is a question of fact, decided from the view of the reasonable person while accounting for all of the surrounding circumstances and facts, see Kanne v. Conn. Gen. Life Ins. Co., 867 F.2d 489, 492 (9th Cir. 1988).[7] The Court's determination as to preemption must turn on its ability to classify the branch manager accounts as ERISA-governed plans given the factual allegations of Plaintiffs' complaint. Courts reach varying results when considering this issue on a motion to dismiss. Generally, if the plaintiff pleads that the plan possesses elements that do not resemble an ERISA-governed plan, then dismissal on preemption grounds is inappropriate, even if the complaint also pleads elements to the plan that are characteristic of ERISA plans. See Harper v. Am. Chambers Life Ins. Co., 898 F.2d 1432, 1432-33 (9th Cir. 1990) (reversing dismissal of state law claims due to ERISA preemption on grounds of insufficient factual record to support existence of ERISA-governed plan); Aiena v. Olsen, 69 F. Supp. 2d 521, 531-32 (S.D.N.Y. 1999) (rejecting preemption argument on motion to dismiss due to court's inability to determine, based on pleadings, whether plan qualified as employee benefits plan under § 1002); see also Zipperer v. Raytheon Co., 493 F.3d 50, 53-55 (1st Cir. 2007) (preempting state law claims on motion to

---

[7] Thus, plaintiffs' allegation that there is an ERISA plan is a conclusion of law not binding on the court.

14

dismiss when plan clearly fit § 1002's definition of employee benefit plan).

In accepting all of its allegations as true, see Cooper, 378 U.S. at 546, Plaintiffs' complaint appears open to two reasonable interpretations -- one that leads to the existence of an ERISA-governed plan, and the other that does not. Plaintiffs have alleged facts sufficient to permit the inference that the accounts at issue are not employee benefits plans as defined in § 1002.

On one hand, Plaintiffs allege that they were the beneficiaries of the branch manager accounts, and that Defendants established the accounts to provide, in part, "payment . . . for reasons including sickness, disability, . . . vacation pay, . . . [and] periodic retirement payment." Compl. at ¶ 23, lns. 28-1. Such purposes are in accord with those expressed under ERISA. See 29 U.S.C. § 1002(1), (2). Plaintiffs' complaint alleges that the net profits from each branch financed that branch's respective account, and that the procedure for withdrawal of funds for these purposes came by way of Plaintiffs' request for such funding.[8] Plaintiffs further allege they received monthly statements via the Internet and

---

[8] Plaintiffs also allege that Defendants told them "regularly and repeatedly" that the "accounts were an employee benefit plan device." Compl. at ¶ 23, lns. 25-26. However, promises alone do not suffice to create an ERISA plan unless the plan presents an organizational structure allowing a reasonable person to identify the plan's beneficiaries, benefits, and source of funding. Miller v. Rite Aid Corp., 504 F.3d 1102, 1108 (9th Cir. 2007) (citing Winterrowd, 321 F.3d at 939).

15

U.S. Postal Service and that Defendants told them how to go about accessing the accounts. By drawing all reasonable inferences from the allegations of the complaint, <u>Retail Clerks Int'l Ass'n</u>, 373 U.S. at 753 n.6, these activities may constitute the required ongoing administrative program required for an ERISA-governed plan. <u>Winterrowd</u>, 321 F.3d at 938-39.

On the other hand, however, according to the allegations in Plaintiffs' complaint, the accounts also provided salaries and funding for economic need and other discretionary purposes. Funding for such purposes is nowhere to be found under an employee welfare benefit or pension plan as defined in § 1002.

On a motion to dismiss based on ERISA preemption, courts may only dismiss state law claims if no reasonable inference allows the conclusion that the plan at issue is a plan not governed by ERISA. See <u>Retail Clerks Int'l Assn</u>, 373 U.S. at 753 n.6; <u>Harper</u>, 898 F.2d at 1432-33. Based on Plaintiffs' allegations, the Court is unable to conclude that § 1144(a) preempts Plaintiffs' state law claims. The Court therefore denies Defendants' motion to dismiss Plaintiffs' remaining state law claims for breach of fiduciary duty, fraud, and conversion.

### IV. Conclusion

For the reasons stated above, defendants Cassell's and Fuchs's motion to dismiss Plaintiffs' RICO and state law claims is DENIED.

IT IS SO ORDERED.

DATED: February 14, 2008.

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT