UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK GELOW, et al.,

        Plaintiffs,

   v.

CENTRAL PACIFIC MORTGAGE
CORPORATION, et al.,

        Defendants.
_____/

NO. CIV. S-07-1988 LKK/KJM

O R D E R

Plaintiff Mark Gelow and ten other individuals bring the present action against their former employer, Central Pacific Mortgage Corporation ("CPM"); its subsidiary, Ivanhoe Financial, Inc. ("Ivanhoe"); and several executive officers of the two companies, including John Courson, John Cassell, and Ed Fuchs. Plaintiffs seek recovery on numerous grounds, including violation of the Racketeering Influenced and Corrupt Organizations Act and numerous state law claims.

Pending before the Court is defendants' motion to compel arbitration. The court resolves the motion on the papers and after

1

oral argument. For the reasons stated below, the motion is denied.

## I. BACKGROUND AND ALLEGATIONS[1]

Plaintiffs allege that defendants CPM and Ivanhoe existed as mortgage loan companies until their demise in early 2007. Complaint ¶¶ 12, 13, 28. During the times relevant to the complaint, either CPM or Ivanhoe employed each of the plaintiffs as branch managers. Id. ¶ 22. Each branch had an account containing all of the net profits for that branch. Id. ¶ 23. Plaintiffs made monthly salary withdrawals from these accounts, as well as withdrawals from the accounts for various other expenses, including vacation, illness, disability, and retirement. Id. In 2007, CPM and Ivanhoe informed plaintiffs of the companies' closures. Id. ¶ 28. Defendants also informed Plaintiffs at this time that the funds in each of the accounts were no longer available. Id. Consequently, Plaintiffs filed this action alleging violation of ERISA, violation of RICO, fraud, conversion, breach of fiduciary duty, and breach of contract.

In this motion, the defendants seek to enforce arbitration agreements that they allege were part of the plaintiffs' employment contracts. Some of these contracts (those of plaintiffs Stefanski, Just, Meier, Herndon, Sierra, and Trout) have been tendered in support of this motion. See Declaration of Kristina Launey in Support of Defendants' Motion to Compel Arbitration ("Launey

---

[1] Each side has lodged objections to various pieces of evidence offered by the other. To the extent that the court relies on that evidence in this order, those objections are OVERRULED.

2

Decl."), Ex. A-F. Each of these contracts is nearly identical. Each is typed, with blank spots left for the employee's name, address, choice of law, and date and place of signing; this information has been filled in by hand on most of the contracts.[2] See, e.g., Launey Decl. ¶ 2, Exh. A (employment contract of Jase Stefanski); ¶ 3, Exh. B (employment contract of Jeffrey Just).

Each employment contract contains a provision by which the employer and employee agree to arbitrate disputes. See, e.g., See, e.g., Launey Decl. ¶ 2, Exh. A (employment contract of Jase Stefanski) § 6.01.[3] The agreement to arbitrate applies to "any dispute involving Employer and Employee that would otherwise be cognizable in a court of law," excluding ERISA claims and several

---

[2] An exception is the contract of plaintiff Sierra, which is entirely typed, and the contract of plaintiff Trout, which is almost entirely typed. Launey Decl. ¶ 6, Exh. E (employment contract of Arturo Sierra); ¶ 7, Exh. F (employment contract of Bruce Trout).

[3] Plaintiff Trout's contract is exceptional, in that there is only one section of the contract discussing arbitration. It states, in its entirety:
> Any controversy or claim arising out of or relating to this agreement, or a breach thereof, shall be settled by arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The costs of arbitration shall be borne by the losing party or in such proportions as the arbitrator(s) decide.

Launey Decl. ¶ 7, Exh. F (employment contract of Bruce Trout) § 6.04.

Defendants acknowledge this discrepancy and contend that, during the course of his employment, plaintiff Trout signed an "updated" employment contract that contains all of the arbitration provisions described above. Declaration of Valerie Silva In Support of Defendants' Motion to Compel Arbitration ¶ 9.

3

other types of claims. Id. §§ 6.03, 6.04. The agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, "or the provisions of any applicable state arbitration statute." See, e.g., Launey Decl. ¶ 3, Exh. B (employment contract of Jeffrey Just) § 6.10.

The contract provides for a single, neutral arbitrator selected in accordance with AAA rules. Id. § 6.06. Among the arbitrator's authorities, he may "permit reasonable discovery." Id. § 6.08. Each party may subpoena witnesses and documents for the arbitration hearing. Id. § 6.09.

The contract further states:

> The arbitrator shall apply the substantive law applicable and may award, any remedy authorized by law. The arbitrator has no authority to (a) add to or modify the terms of any contract between the parties, (b) require Employer to adopt new Company policies or procedures, or (c) hear or decide any matter that was not processed in accordance with this Article, absent written consent of both parties.

Id. § 6.08. The arbitrator will issue written findings of fact, findings on each issue supporting the award, and the necessary conclusions of law to support the award decision. Id. § 6.09.

The contract also describes the fee arrangement for arbitration. If the employer initiates arbitration, it pays all administration fees. If the employee initiates it, he must pay up to $150 in administration fees, with the remainder paid by the employer. Id. § 6.07. If the employee's claims are "based on statutes that govern the employment relationship," the employer will pay all the fees and expenses of the arbitrator, unless the

4

1 employee agrees to pay half of the fees himself. Finally, "[i]f
2 [the] Employee's claims are based on the contract or common law,
3 the fees and expenses of the arbitrator shall be split by the
4 parties, with [the] Employee bearing one-half of the initial filing
5 fee, case service fee, and any additional fees imposed by the
6 arbitrator." Id.

7 Defendants represent that all of the plaintiffs signed
8 employment contracts containing these arbitration agreements.
9 Declaration of Valerie Silva In Support of Defendants' Motion to
10 Compel Arbitration ("Silva Decl.") ¶¶ 5-9. Defendant Courson has
11 declared that these contracts were not retained by defendants after
12 Central Pacific Mortgage Corporation was bought by another company.
13 Declaration of John Courson in Support of Defendants' Reply to
14 Plaintiffs' Opposition to Defendants' Motion ("Courson Decl.") ¶
15 4.

16 Except for plaintiffs Gelow and Mann, all of the remaining
17 plaintiffs acknowledge having signed employment contracts, although
18 they do not describe whether they contained arbitration provisions.
19 See, e.g., Declaration of Erik Fridley In Opposition to Motion to
20 Compel Arbitration ¶ 3. Plaintiff Gelow has declared that he does
21 not recall whether his contract contained an arbitration provision.
22 Declaration of Mark Gelow In Opposition to Motion to Compel
23 Arbitration ("Gelow Decl.") ¶¶ 3-4. Plaintiff Mann stated that she
24 does not recall having signed an employment contract with the
25 defendants and that she did not recall her contract with Ivanhoe
26 Financial containing an arbitration provision. Declaration of Jenny

5

Mann In Opposition to Motion to Compel Arbitration ("Mann Decl.") ¶ 3.

All the plaintiffs (with the exception of plaintiffs Gelow and Mann) have declared that their employment contracts with the defendant, which contained the arbitration provision, were non-negotiable in their terms and were required for continuing employment with the defendant. See, e.g., Declaration of Stephen Herndon In Opposition to Motion to Compel Arbitration ¶ 3.

On September 21, 2007, the plaintiffs filed their complaint. On December 20, 2007, defendants Cassell and Fuchs moved to dismiss on the grounds that the plaintiffs' state law claims were pre-empted by ERISA and that plaintiffs' RICO claims were inadequately pled. The court denied the motion. On February 11, 2008, the court held a scheduling conference, which counsel for all parties attended. Neither at that conference nor in their status report filed prior to the conference did defendants alert the court to the possibility of arbitration. In March 2008, the plaintiffs filed a First Amended Complaint, which defendants answered on April 14, 2008.

## II. STANDARD FOR A MOTION TO COMPEL ARBITRATION

A party to an arbitration agreement may move to compel arbitration when the other party "unequivocally refuses to arbitrate, either by failing to comply with an arbitration demand or by otherwise unambiguously manifesting an intention not to arbitrate[.]" PaineWebber, Inc. v. Faragalli, 61 F.3d 1063, 1066 (3rd Cir. 1995); 9 U.S.C. § 4. The petition to compel must be

6

supported by an independent basis for federal subject-matter jurisdiction under Title 28 to be brought in federal court, such as diversity of citizenship. Southland Corp. v. Keating, 465 U.S. 1, 15 n. 9. Once these requirements are met, and if the court is satisfied that the agreement covers the dispute in question and a valid agreement to arbitrate exists, the court must issue an order directing the matter to arbitration. 9 U.S.C. § 4; see also Chiron Corp v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (the Court's role is limited to determining whether a valid agreement to arbitrate exists and whether the agreement encompasses the dispute at issue).

### III. ANALYSIS

The Federal Arbitration Act (FAA) governs arbitration agreements that concern interstate commerce. 9 U.S.C. § 2. The purpose of the FAA is to "place such agreements upon the same footing as other contracts," and thus represents Congress's intent to favor the enforceability of arbitration agreements. Volt Information Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior University, 489 U.S. 468, 474-75 (1989) (internal citations omitted). Because the crux of the FAA is to ensure the enforcement of valid arbitration agreements, valid choice of law provisions within the agreement should be honored. Id. at 472. Generally courts apply state contract law in determining the enforceabililty of an arbitration agreement that falls within the ambit of the FAA. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1170 (9th Cir.

2003).

Here, the contracts at issue concern interstate commerce because the defendants' business operated in several states. See The Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56-58 (2003). Accordingly, here the court turns to California law in considering plaintiffs' arguments that the agreement is unenforceable because it is unconscionable and because defendants waived their right to compel arbitration.[4]

**A.   Which Plaintiffs Are Bound By Arbitration Agreements**

Preliminarily, the parties dispute which plaintiffs agreed to arbitration as part of their employment contracts.

The party seeking to enforce an arbitration agreement bears the burden of showing that the agreement exists and that its terms bind the other party. See, e.g., Sanford v. Memberworks, Inc., 483 F.3d 956, 962 (9th Cir. 2007); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1139-41 (9th Cir. 1991); see also Opals on Ice Lingerie v. Bodylines, Inc., 320 F.3d 362 (2d Cir. 2003) (holding that arbitration clause of a contract was unenforceable because party seeking to enforce had not shown that a lawful contract had been created). This burden is a substantial one:

> Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect. . . .

---

[4] The parties dispute whether state or federal procedural law should govern, as the court considers whether to stay the non-arbitrable claims. The court need not reach this question, as none of the arbitration agreements are enforceable.

8

    The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise.

Three Valleys Mun. Water Dist., 925 F.2d at 1141 (citing Par-Knit Mills, Inc. v. Stockbridge Fabric Co., 636 F.2d 51, 54 (3rd Cir. 1980)).

  Here, defendants have tendered the employment contracts of plaintiffs Stefanski, Just, Meier, Herndon, Sierra, and Trout. See Launey Decl. Exh. A-F. Most of these contracts contain similar arbitration provisions, with the exception of plaintiff Trout's, as noted *supra*. Defendants also have tendered declarations that all of the remaining plaintiffs also signed contracts containing the same arbitration provisions, though these agreements have not been tendered. See Silva Decl. ¶¶ 5-9; Declaration of John Cassell in Support of Defendants' Reply to Plaintiffs' Opposition to Defendants' Motion ("Cassell Decl.") ¶ 3. Except for plaintiffs Gelow and Mann, all of the plaintiffs acknowledge having signed employment contracts, although they do not describe whether they contained arbitration provisions. See, e.g., Declaration of Erik Fridley In Opposition to Motion to Compel Arbitration ¶ 3.

  The evidence that plaintiffs Gelow and Mann signed employment contracts that contained arbitration agreements is minimal, consisting principally of Valerie Silva's declaration that her recollection is that all branch managers signed employment contracts containing arbitration provisions and that she specifically recalled that plaintiff Gelow's employment contract

contained such a provision. Silva Decl. ¶¶ 5-9. Defendants also have tendered evidence that it was their practice to have employees sign employment contracts containing arbitration provisions. Cassell Decl. ¶ 3. These imprecise descriptions and recollections do not suffice to show that these plaintiffs in fact agreed to arbitrate disputes with defendants, particularly in light of the plaintiffs' contradictory declarations. See Sanford, 483 F.3d at 962; Three Valleys Mun. Water Dist., 925 F.2d at 1139-41. Defendants have not met their burden to show that arbitration agreements were made with plaintiffs Gelow and Mann.

**B.   Unconscionability of the Arbitration Agreements**

Plaintiffs further contend that none of the arbitration agreements are enforceable because they are unconscionable. The court agrees.

An arbitration agreement that falls within the ambit of the FAA is nevertheless unenforceable if it is unconscionable under state law. Ferguson v. Countrywide Credit Indus., Inc., 298 F.3d 778, 782 (9th Cir. 2002). A contract is unconscionable where there are elements of procedural and substantive unconscionability, though each need not be present to the same degree. Id. at 783; Armendariz v. Found. Health Psychcare Servs., Inc., 24 Cal. 4th 83, 114 (2000).

**1.   Procedural Unconscionability**

Oppression and surprise are the hallmarks of procedural unconscionability. Ingle v. Circuit City Stores, Inc., 328 F.3d 1165, 1171 (9th Cir. 2003) (applying California law). Oppression

10

exists where one party has a weaker bargaining position, precluding him from a meaningful opportunity to negotiate the terms of the contract. Id., citing Stirlen v. Supercuts, Inc., 51 Cal. App. 4th 1519, 1532 (Cal. Ct. App. 1997). Courts have found employment contracts oppressive where they are drafted by the employer and presented to the employee on a take-it-or-leave-it basis. See id.; Circuit City Stores, Inc. v. Adams (Adams III), 279 F.3d 889, 892-93 (9th Cir. 2002); Armendariz, 24 Cal. 4th at 114-15; Stirlin, 51 Cal. App. 4th at 1533-34. An adhesive contract is procedurally unconscionable even when the employee has had several days to review it before signing. Ingle, 328 F.3d at 1172 (adhesive arbitration agreement procedurally unconscionable where employee had three days to consider it).

The sophistication of the employee or the likelihood that he has other employment options does not mitigate the procedural unconscionability of an adhesive contract. In Stirlen, the plaintiff had been a successful executive working for another company when he was approached by defendant Supercuts. Stirlin, 51 Cal. App. 4th at 1533. Supercuts "hired [him] away" from the other corporation by offering a "generous" salary and benefit package. Id. The court was unpersuaded that this showed that the employment contract was not procedurally unconscionable. Id. at 1534. Although the plaintiff may have been able to negotiate his compensation, the employment contract itself was a standard form used by the defendant for all of its employees and there was no evidence that its terms were negotiable by the plaintiff. Id. This, the court

11

held, was procedurally unconscionable. Id.; see also Szetela v. Discover Bank, 97 Cal. App. 4th 1094, 1100 (Cal. Ct. App. 2002) (holding that an adhesive contract for credit card services was procedurally unconscionable, notwithstanding the plaintiffs' ability to acquire the same services elsewhere).[5]

Here, the arbitration agreements defendants seek to enforce are similarly procedurally unconscionable. Every plaintiff (with the exception of plaintiffs Gelow and Mann) has declared that the employment contracts with the defendant, which contained the arbitration provision, were non-negotiable in their terms and were required for continuing employment with the defendant. See, e.g., Declaration of Stephen Herndon In Opposition to Motion to Compel Arbitration ¶ 3. The copies of the employment agreements of plaintiffs Herndon, Just, Meier, Sierra and Stefanski, which the defendants have tendered to the court, appear to be virtually identical form contracts. See Launey Decl., Exh. A-E. Declarant Silva's description of the process by which employment contracts were created confirms this impression, as she describes the contracts as originating from and being revised periodically by the defendant. Silva Decl. ¶¶ 6-7.

Whether the plaintiffs were sophisticated business-persons who had other employment options does not bear on the issue, despite defendant's contention otherwise. See Cassell Decl. ¶ 6. California

---

[5] Given that we deal with an employment contract, the court does not find the fact that several of the plaintiffs were business owners prior to the sale to the defendants as sufficiently distinguishable as to suggest a different result.

12

law is clear that the dispositive question is whether the employee had a meaningful opportunity to alter the terms of the employment contract and, specifically, to reject the arbitration provision if he chose. See Stirlin, 51 Cal. App. 4th at 1534; Szetela, 97 Cal. App. 4th at 1100. The evidence before the court indicates that the plaintiffs did not. Consequently, the arbitration agreements were procedurally unconscionable.

**2. Substantive Unconscionability**

A contract is substantively unconscionable when its terms are so one-sided as to shock the conscience. Ingle, 328 F.3d at 1172; Kinney v. United HealthCare Serv., Inc., 70 Cal. App. 4th 1322, 1330 (Cal. Ct. App. 1999). When an arbitration agreement is required by the employer as part of the employment contract, the agreement must contain five minimum elements in order to be lawful: (1) reference to a neutral arbitrator, (2) provision for more than minimal discovery, (3) requirement that award decision be written, (4) provision for all of the types of relief that may be awarded by the court, and (5) it "does not require employees to pay either unreasonable costs or any arbitrators' fees and expenses as a condition of access to the arbitration forum." Armendariz v. Foundation Health Psychcare Serv., 24 Cal. 4th 83, 102-103 (2000) (citing Cole v. Burns Intern. Sec. Serv., 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

Here, it appears that several of these minimum standards have been met. The arbitration agreements provide for reference to a neutral arbitrator, require written awards, and allow for more than

13

minimal discovery. See, e.g., Launey Decl. ¶ 3, Exh. B (employment contract of Jeffrey Just) §§ 6.06, 6.08, 6.09. Plaintiffs do not dispute this. Nevertheless, in their provisions for remedies and employees' fee payment, the arbitration agreements fail to meet even the minimum standards of Armendariz and therefore are substantively unconscionable.

### 1. Limitation of Remedies

In order for an arbitration agreement to be lawful, it must allow for all types of relief that a court could order. Armendariz, 24 Cal. 4th at 102. For example, an arbitration agreement that allowed the employee to recover only damages was "contrary to public policy and unlawful." Id. at 103-104. Similarly, an agreement that would not allow an employee to recover punitive damages that were permitted by statute was held substantively unconscionable. Ingle, 328 F.3d at 1178-79; Adams III, 279 F.3d at 895.

Here, the language of the arbitration agreements is equivocal. Although they state that the arbitrator "may award any remedy authorized by law," the very next sentence limits the arbitrator's authority.[6] See, e.g., Launey Decl. ¶ 3, Exh. B (employment contract of Jeffrey Just) § 6.08. Among other limitations, it states that the arbitrator may not "require Employer to adopt new Company policies or procedures." Id. This is a remedy that a court

---

[6] As it is required to do, the court construes this inconsistency against the drafter. Cal. Civ. Code § 1654. Defendants do not dispute that they drafted the employment contracts. Silva Decl. ¶¶ 5-6; Cassell Decl. ¶ 5.

14

could order as a form of injunctive relief. Because the arbitration agreements do not allow it, their limitation on the possible remedies available to an employee is substantively unconscionable. See Ingle, 328 F.3d at 1178-79; Armendariz, 24 Cal. 4th at 102.

### 2. Fee Allocation Provision

A contract is unconscionable if it requires the employee to pay a fee or incur an expense in order to access the arbitration forum. Armendariz, 24 Cal. 4th at 102. This is true whether the fee is characterized as a "filing fee" or as a cost-splitting arrangement. See Ingle, 328 F.3d at 1177-78; see also Armendariz, 24 Cal. 4th at 110 ("when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement . . . cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court" (emphasis in original)).

Here, there are two expenses in the arbitration agreements that are potentially problematic. First, the agreements require that the employee pay $150 in administration fees if he institutes an action against the defendants. See, e.g., Launey Decl. ¶ 3, Exh. B (employment contract of Jeffrey Just) § 6.07. Although this represents an expense that the employee must incur in order to access the arbitration forum, the California courts have held that this type of filing fee is not problematic since it resembles the types of fees that a plaintiff would incur when filing a complaint in court. Armendariz, 24 Cal. 4th at 108 (quoting Cole, 105 F.3d at 1484). Moreover, the arbitration agreements provide that the

15

employee pay this fee to the arbitration administrator, not to the defendants themselves, distinguishing this case from others in which courts have found "filing fee" provisions substantively unconscionable. See Ingle, 328 F.3d at 1177-78. Therefore, the $150 filing fee is not substantively unconscionable.

The cost-splitting provision of the agreement, however, is. The agreement requires the employee to pay half of the fees and expenses of the arbitrator if the employee has brought a claim against the employer based on the contract or common law. See, e.g., Launey Decl. ¶ 3 Exh. B (employment contract of Jeffrey Just) § 6.07. Such provisions have been uniformly found to be unconscionable, as they plainly favor the employer and discourage the employee from bringing his claims. See, e.g., Ingle, 328 F.3d at 1177-78; Adams III, 279 F.3d at 894; Cal. Teachers Ass'n v. State of Cal., 20 Cal. 4th 327, 355-56 (1999). Particularly where, as here, the employee must pay these fees even if he succeeds in his claim against the employers, this provision "blatently offends basic principles of fairness." Ingle, 328 F.3d at 1177-78. In fact, it is so one-sided, that courts have held that the presence of this provision alone renders a contract substantively unconscionable. Id.; Adams III, 279 F.3d at 894.

The defendants acknowledge that this provision is "potentially problematic," but encourage the court to sever it and enforce the remaining terms of the agreement. Severance is not proper when there are more than one unlawful provisions in a contract, as a multiplicity of defects indicates a systematic effort to discourage

1  employees from arbitrating claims. Armindariz, 24 Cal. 4th at 124;
2  Little v. Auto Steigler, Inc., 29 Cal. 4th 1064, 1074-75 (2003).
3  Here, both the cost-splitting provisions and the limitation on
4  remedies are unlawful. Severance is inappropriate.
5  Accordingly, because the arbitration agreements are both
6  procedurally and substantively unconscionable, and both to a
7  significant degree, they are unenforceable.

**IV. CONCLUSION**

For the reasons expressed herein, the defendants' motion to compel arbitration is DENIED.

IT IS SO ORDERED.

DATED: June 3, 2008.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

17