**FILED**

NOV 17 2009

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MARK GELOW, et al.,

        Plaintiffs,

    v.

CENTRAL PACIFIC MORTGAGE
CORPORATION, et al.,

        Defendants.

_____/

NO. CIV. S-07-1988 LKK/KJM

**PRETRIAL CONFERENCE ORDER**
**[TENTATIVE]**

    Pursuant to court order, a Pretrial Conference was held in Chambers on November 9, 2009. JEFFREY K. REICH appeared as counsel for plaintiffs; MARK H. VAN BRUSSEL appeared for defendants. After hearing, the court makes the following findings and orders:

**I.   JURISDICTION/VENUE**

    Jurisdiction is predicated upon 28 U.S.C. § 1367 and 18 U.S.C. § 1964(a) (RICO). Venue is proper under 28 U.S.C. § 1391. These orders are found to be appropriate.

**II.   JURY/NON-JURY**

    The trial will be by jury.

////

1

1

### III.   UNDISPUTED FACTS

2    1.    Defendant Central Pacific Mortgage (CPM) is a California
3    corporation that performed residential mortgage lending through its
4    branch offices in California and elsewhere.

5    2.    Defendant John Courson was CPM's President and Chief
6    Executive Officer from 1990 to 2007, when CPM closed.  Beginning
7    in 2000, he was also its sole owner and shareholder.

8    3.    Defendant John Cassell was Senior Vice President and
9    Chief Financial Officer from 1994 to 2001, at which time he became
10   Executive Vice President of Operations and Administration.

11   4.    Defendant Ed Fuchs was Vice President of Accounting of
12   CPM beginning in 1995 and became Senior Vice President of Finance
13   in 2002 and then Executive Vice President of Finance in 2005.

14   5.    CPM had retail branches that originated mortgage loans
15   directly with borrowers, and wholesale branches that purchased
16   mortgage loans originated by other, third-party mortgage brokers.

17   6.    After CPM's branches originated loans, and the loans
18   were funded by warehouse lenders, CPM bundled and sold the loans
19   on the secondary market to investors.

20   7.    Revenues from the bundled and resold loans were used to
21   repay the amounts CPM had borrowed to fund the loans, with the
22   surplus used to pay CPM's expenses, including salaries.  This
23   surplus was credited to the branch originating the loan that was
24   funded and tracked in CPM's general ledger accounting system

25   8.    Each of the plaintiffs are former CPM branch managers.

26   9.    The branch managers were employees of CPM and each

1  signed a Branch Manager Employment Agreement upon attaining that
2  position.

3      10.   The Branch Manager Employment Agreements provide that
4  the   agreement   as   written   constitutes   the   entire   employment
5  agreement between the plaintiffs and CPM.  They also provided that
6  the   agreement   can   only   be   modified   by   a   signed   writing.    The
7  agreements set forth the branch managers' compensation.  According
8  to the agreements, the branch manager could draw a salary based on
9  the net profit of his or her branch.

10     11.   Branch managers had unfettered access to their
11  respective   branches'   net   profits   and   could   receive   their
12  compensation   as   salary   at   intervals   and   in   amounts   that   they
13  wished.

14     12.   Branch managers were required to draw a salary of at
15   least $1,100 per pay period.

16     13.   CPM's payroll department would pay branch managers'
17  salaries out of CPM's payroll account at Wells Fargo.

18     14.   Each manager received a monthly statement setting forth
19  his or her branch's account balance.

20     15.   The amount of funds shown in a balance would naturally
21  fluctuate based on the branch's revenues and expenses at any given
22  time.

23     16.   Branch account funds were never kept in segregated
24  accounts, but simply represented the maximum amount that the branch
25  managers could draw down.

26     17.   Each branch manager received monthly statements via mail

1 | or Internet disclosing the balance of their branch account and
2 | indicating that their branch account did carry a balance.

3 |     18.   The branch managers' salaries were subject to normal
4 | state and federal tax withholdings and deductions and the branch
5 | managers reported as salary those amounts they drew down from the
6 | branch's net profits.

7 |     19.   When the funds were reported as salary, they would be
8 | subject to income tax and thus many of the managers preferred not
9 | to draw down more than they needed.  At the end of the year, any
10 | net profits the branch retained that had not been drawn as the
11 | branch manager's salary would be rolled over to the next year.

12 |     20.   In the first quarter of 2006, CPM, desiring to expand
13 | its operation into the Southeastern region of the country,
14 | purchased a division of Ivanhoe Mortgage, a Florida-based company
15 | with 20 branches.

16 |     21.   In February 2006, Cassell went to Orlando, Florida to
17 | manage the transition of Ivanhoe into CPM.  He then remained in
18 | Orlando and managed Ivanhoe as a stand alone division.

19 |     22.   In 2006, the real estate and mortgage market began to
20 | slow down and CPM experienced a drop in loan volumes.   CPM's
21 | warehouse banks began to tighten credit.   CPM also faced an
22 | increase in the number of loan repurchase demands from its
23 | warehouse banks and investors because of early defaults by mortgage
24 | borrowers.  CPM was also using cash to sustain the growth of its
25 | newly-acquired wholesale operation.  As a result, by mid-2006, CPM
26 | began experiencing challenges maintaining adequate levels of cash.

4

1  Later that year, CPM's executives began negotiations to sell CPM
2  to another company, The Mortgage Store.

3      23.   In January or February 2007, Courson sent a letter to
4  all branch managers advising that CPM had reached its limit of
5  credit for mortgage loans but that it was endeavoring "to return
6  to business as usual."

7      24.   In December 2006, CPM and The Mortgage Store entered
8  into an agreement for the sale of all of CPM/Ivanhoe's branches to
9  The Mortgage Store.   On February 14, 2007, Courson and The Mortgage
10 Store President jointly conducted a conference call with all CPM
11 branch managers.

12     25.   In mid-February, as the sale of CPM to The Mortgage
13 Store was about to close, CPM's wholesale branches were recruited
14 away by other companies.

15     26.   When CPM could no longer deliver the promised number of
16 wholesale branches, The Mortgage Store at the end of February 2007
17 backed out of the purchase of CPM.

18     27.   CPM announced the company's closure on February 26,
19 2007.

20     28.   When it closed, CPM was unable to pay the final wages
21  due its officers, branch managers, and other employees.   CPM owed
22 moneys to its warehouse lenders and defaulted on these loans.   CPM
23 used the assets it had to pay certain bills, taxes, and 401(k)
24 obligations.

25     29.   The stated respective sums from the branch accounts owed
26 to each plaintiff are as follows:

| | |
|---|---|
| Mark Gelow | $ 525,001.66 |
| Bruce Trout | $  53,985.76 |
| Erik Fridley | $  24,961.34 |
| Jenny Mann | $   8,930.18 |
| Stephen Meier | $  11,634.67 |
| Jase Stefanski | $   5,219.48 |
| Gayle Pederson | $  33,236.08 |

## IV.  DISPUTED FACTUAL ISSUES

### A.   Fraud - Nature of Branch Accounts

#### 1. Herndon v. Courson

1.   Whether or not Courson orally represented to Herndon over the years that the money in the branch manager's account was his alone and no one would touch the money in the account without his permission.

2.   Whether or not Courson made such representations to Herndon with knowledge of their falsity.

3.   Whether or not Courson made such representations to Herndon with an intent to induce his reliance.

4.   Whether or not Herndon actually or justifiably relied on Courson's representations to his detriment.

5.   Whether or to what extent Herndon was damaged as a result.

#### 2. Gordon v. Courson

6.   Whether or not Courson, Cassell or Fuchs represented to Gordon at a January 2006 meeting that the branch accounts were segregated and secured for the branch managers' exclusive benefit.

1     7.   Whether or not Courson, Cassell, or Fuchs made such
2 representations to Gordon with knowledge of their falsity.

3     8.   Whether or not Courson, Cassell, or Fuchs made such
4 representations to Gordon with an intent to induce her reliance.

5     9.   Whether or not Gordon actually or justifiably relied on
6 Courson, Cassell, or Fuchs' representations to her detriment.

7     10.  Whether or to what extent Gordon was damaged as a result.

8 **3. Just v. Courson**

9     11.  Whether or not Courson, Cassell, or Fuchs represented to
10 Just in the years before CPM closed that the branch accounts were
11 segregated and secured for the branch managers' exclusive benefit.

12     12.  Whether or not Courson, Cassell, or Fuchs made such
13 representations to Just with knowledge of their falsity.

14     13.  Whether or not Courson, Cassell, or Fuchs made such
15 representations to Just with an intent to induce his reliance.

16     14.  Whether or not Just actually or justifiably relied on
17 Courson, Cassell, or Fuchs' representations to his detriment.

18     15.  Whether or to what extent Just was damaged as a result.

19 **4. Sierra v. Courson**

20     16.  Whether or not Courson or Cassell represented to Sierra
21 that the money in the branch manager account was "safe and would
22 be kept available for" him.

23     17.  Whether or not Courson or Cassell made such
24 representations to Sierra with knowledge of their falsity.

25     18.  Whether or not Courson or Cassell made such
26 representations to Sierra with an intent to induce his reliance.

1    19.   Whether or not Sierra actually or justifiably relied on
2    Courson or Cassell's representations to his detriment.

3    20.   Whether or to what extent Sierra was damaged as a result.

4  **B.    RICO - Wire Fraud**

5          **1. Herndon, Gordon, Just, and Sierra v. Courson**

6    21.   Whether  or  not  the  defendants  made  the  alleged
7    misrepresentations by wire (telephone) at least twice.

8  **C.    Breach of Contract**

9          **1. Herndon, Gordon, Just, and Sierra v. CPM**

10   22.   The  sums  owed  to  the  following  plaintiffs  from  their
11   branch accounts are in dispute:   Herndon, Gordon, Just, Sierra

12        **V.    NON-DISCOVERY MOTIONS TO THE COURT AND RESOLUTION**

13        The court has ruled on three substantive motions: a motion
14   to dismiss, a motion to compel arbitration, and motion for
15   summary judgment.

16        On February 14, 2008, the court denied a motion to dismiss
17   the RICO and state law claims.   The court held that it could not
18   conclude at that stage that the state law claims were preempted
19   by ERISA, and that plaintiffs had alleged a pattern of
20   racketeering activity.

21        On June 3, 2008, the court denied a motion to compel
22   arbitration.

23        On August 28, 2009, the court denied in part and granted in
24   part a motion for summary judgment brought by the individual
25   defendants.   The court denied summary judgment as to four
26   plaintiffs' fraud and RICO claims against the individual

defendants insofar as these claims were premised on statements
describing the security and exclusive use of the branch
accounts.   The court granted summary judgment as to all other
claims against the individual defendants.   In light of the fact
that CPMC did not seek summary judgment, the order did not
discuss claims against CPMC.

**Plaintiffs are directed to inform the court which claims against CPMC plaintiffs intend to pursue at trial.**

## VI.   DISPUTED EVIDENTIARY ISSUES

Defendants object to plaintiffs' designation of Ken Savage,
CPA, as an expert.

## VII.   SPECIAL FACTUAL INFORMATION

None.

## VIII.   RELIEF SOUGHT

Plaintiffs seek recovery of monetary damages on all claims,
punitive damages on the state law fraud claims, and treble
damages under the RICO claims.   Plaintiffs seek fees under RICO
and for their state law contract claim.   Defendants seek
judgment in their favor and seek attorney's fees under Fed. R.
Civ. P. 11.

## IX.   POINTS OF LAW

The parties' trial briefs shall include a discussion of the
following:

(a) The elements, standards, and burdens of proof of a
claim under RICO, 18 U.S.C. § 1962(a) and (c), under the facts
and circumstances of this case.

(b) The elements, standards, and burdens of proof of a claim for fraud under California law, under the facts and circumstances of this case.

(c) As to CPMC, the elements, standards, and burdens of proof of a claim for conversion under California law, under the facts and circumstances of this case.

(d) As to CPMC, the elements, standards, and burdens of proof of a claim for breach of contract under California law, under the facts and circumstances of this case.

(e) As to CPMC, the elements, standards, and burdens of proof of a claim for breach of fiduciary duty under California law, under the facts and circumstances of this case.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

## X.   ABANDONED ISSUES

The parties have settled the claims against John Cassell and Ed Fuchs.

## XI.   WITNESSES

Plaintiff anticipates calling the following witnesses:

See attachment "A".

Defendant anticipates calling the following witnesses:

See attachment "B".

Each party may call a witness designated by the other.

A.   No other witnesses will be permitted to testify unless:

(1)   The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)   The witness was discovered after the Pretrial Conference and the proffering party makes the showing required in "B" below.

B.   Upon the post-Pretrial discovery of witnesses, the attorney shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify.   The evidence will not be permitted unless:

(1)   The witnesses could not reasonably have been discovered prior to Pretrial;

(2)   The court and opposing counsel were promptly notified upon discovery of the witnesses;

(3)   If time permitted, counsel proffered the witnesses for deposition;

(4)   If time did not permit, a reasonable summary of the witnesses' testimony was provided opposing counsel.

## XII.   EXHIBITS, SCHEDULES AND SUMMARIES

At present, plaintiff contemplates the following by way of exhibits:   See attachment "C".

At present, defendant contemplates the following by way of exhibits:   See attachment "D".

A.   No other exhibits will be permitted to be introduced unless:

11

(1)   The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)   The exhibit was discovered after the Pretrial Conference and the proffering party makes the showing required in paragraph "B," below.

B.   Upon the post-Pretrial discovery of exhibits, the attorneys shall promptly inform the court and opposing counsel of the existence of such exhibits so that the court may consider at trial their admissibility.  The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered prior to Pretrial;

(2)   The court and counsel were promptly informed of their existence;

(3)   Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

As to each exhibit, each party is ordered to exchange copies of the exhibit not later than fifteen (15) days from the date of this Pretrial Order.  Each party is then granted ten (10) days to file with the court and serve on opposing counsel any objections to said exhibits.  In making said objections, the

1  party is to set forth the grounds for the objection.  As to each

2  exhibit which is not objected to, it shall be marked and

3  received into evidence and will require no further foundation.

4  Each exhibit which is objected to will be marked for

5  identification only.

6       In addition to electronically filing said objections, if

7  any, the objections must be submitted by email, as an attachment

8  in Word or WordPerfect format, to: arivas@caed.uscourts.gov.

9       The attorney for each party is directed to appear before

10 and present an original and one (1) copy of said exhibit to Ana

11 Rivas, Deputy Courtroom Clerk, not later than 10:30 a.m. on the

12 date set for trial.  All exhibits shall be submitted to the

13 court in binders.  Plaintiff's exhibits shall be listed

14 numerically.  Defendant's exhibits shall be listed

15 alphabetically.  The parties shall use the standard exhibit

16 stickers provided by the court:  pink for plaintiff and blue for

17 defendant.

18                  **XIII.   DISCOVERY DOCUMENTS**

19      None, except for impeachment purposes.

20               **XIV.   FURTHER DISCOVERY OR MOTIONS**

21      None.

22                    **XV.   STIPULATIONS**

23      None.

24               **XVI.   AMENDMENTS/DISMISSALS**

25      None, except as noted above.

26 ////

1

**XVII.   FURTHER TRIAL PREPARATION**

2      A.   Counsel are directed to Local Rule 16-285 regarding
3  the contents of and the time for filing trial briefs.

4      B.   Counsel are informed that the court has prepared a set
5  of standard jury instructions.  In general, they cover all
6  aspects of the trial except those relating to the specific
7  claims of the complaint.  Accordingly, counsel need not prepare
8  instructions concerning matters within the scope of the prepared
9  instructions.  A copy of the prepared instructions is given to
10  the parties at the Pretrial Conference.

11     B.   For all cases tried to the court, counsel are ordered
12  to file and serve Proposed Findings of Fact and Conclusions of
13  Law not later than ten (10) days prior to the first date of
14  trial.

15     C.   Counsel are further directed that their specific jury
16  instructions shall be filed fourteen (14) calendar days prior to
17  the date of trial.  As to any instructions counsel desires to
18  offer, they shall be prepared in accordance with Local Rule 51-
19  163(b)(1) which provides:

20       "Two copies of the instructions shall be submitted.
21       One copy shall be electronically filed as a .pdf
22       document and shall contain each instruction on a
23       separate page, numbered and identified as to the party
24       presenting it. Each instruction shall cite the
25       decision, statute, ordinance, regulation or other

26

14

1   authority supporting the proposition stated in the
2   instruction."

3   The second copy ("jury copy") shall be submitted by e-mail
4   to lkkorders@caed.uscourts.gov.

5   **In addition, counsel shall provide copies of proposed forms**
6   **of verdict, including special verdict forms, at the time the**
7   **proposed jury instructions are filed with the court.**

8   D.   It is the duty of counsel to ensure that any
9   deposition which is to be used at trial has been filed with the
10  Clerk of the Court.   Counsel are cautioned that a failure to
11  discharge this duty may result in the court precluding use of
12  the deposition or imposition of such other sanctions as the
13  court deems appropriate.

14  E.   The parties are ordered to file with the court and
15  exchange between themselves not later than one (1) week before
16  the trial a statement designating portions of depositions
17  intended to be offered or read into evidence (except for
18  portions to be used only for impeachment or rebuttal).

19  F.   The parties are ordered to file with the court and
20  exchange between themselves not later than one (1) week before
21  trial the portions of answers to interrogatories which the
22  respective parties intend to offer or read into evidence at the
23  trial (except portions to be used only for impeachment or
24  rebuttal).

25  G.   The court has extensive audiovisual equipment
26  available.   Any counsel contemplating its use shall contact the

1 | court's Telecommunications Manager, Andre Carrier, at (916) 930-
2 | 4223, at least two weeks in advance of trial to receive the
3 | appropriate training.

4 | ### XVIII.  SETTLEMENT NEGOTIATIONS

5 | A Settlement Conference is **SET** before the Honorable
6 | Morrison C. England, Jr., United States District Judge, on
7 | December 9, 2009 at 9:00 a.m.  Counsel are directed to submit
8 | settlement conference statements to the settlement judge **not**
9 | **later than fourteen (14) days prior to the conference**.  At
10 | counsel's option, such statements may be submitted in confidence
11 | pursuant to Local Rule 16-270(d).

12 | Each party is directed to have a principal capable of
13 | disposition at the Settlement Conference or to be fully
14 | authorized to settle the matter on any terms and at the
15 | Settlement Conference.

16 | ### XIX.  AGREED STATEMENTS

17 | None proposed.

18 | ### XX.  SEPARATE TRIAL OF ISSUES

19 | The question of punitive damages will be bifurcated from
20 | the case-in-chief.

21 | ### XXI.  IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

22 | None.

23 | ### XXII.  ATTORNEYS' FEES

24 | Plaintiffs request fees under RICO and state law.
25 | Defendants may seek fees under Fed. R. Civ. P. 11.
26 | ////

16

1                      **XXIII.   MISCELLANEOUS**

2      None.

3              **XXIV.   ESTIMATE OF TRIAL TIME/TRIAL DATE**

4      Trial by jury is **SET** for February 9, 2010, at 10:30 a.m.,

5 in Courtroom No. 4.   The parties represent in good faith that

6 the trial will take approximately fifteen (15) days.

7      Counsel are to call Ana Rivas, Courtroom Deputy, at (916)

8 930-4133, one week prior to trial to ascertain status of trial

9 date.

10                  **XXV.   MOTIONS IN LIMINE**

11      The parties are to bring on motions in limine to be heard

12 on January 11, 2010 at 10:00 a.m.   Accordingly, they are to

13 bring on motions in limine twenty-eight (28) days prior thereto,

14 replies fifteen (15) days prior thereto, with closing not later

15 than seven (7) days prior to the hearing.

16          **XXV.   OBJECTIONS TO PRETRIAL ORDER**

17      Each party is granted fifteen (15) days from the effective

18 date of this Pretrial Order [Tentative] to object to or augment

19 same.   Each party is also granted five (5) days thereafter to

20 respond to the other party's objections.   If no objections or

21 additions are made, the Tentative Pretrial Order will become

22 final without further order of the court.

23      The parties are reminded that pursuant to Federal Rule of

24 Civil Procedure 16(e), this order shall control the subsequent

25 course of this action and shall be modified only to prevent

26 manifest injustice.

1                          **XXVI.   OTHER**

2        All time limits and dates that refer to the Pretrial Order

3   refer to the date this Pretrial Order [Tentative] is filed and

4   not the date an amended order, if any, is filed.

5        IT IS SO ORDERED.

6        DATED: November 16, 2009.

7

8                                        LAWRENCE K. KARLTON

9                                        SENIOR JUDGE
                                         UNITED STATES DISTRICT COURT
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The prospective witnesses plaintiffs identify include:

Mark Gelow
Bruce Trout
Erik Fridley
Vici Gordon
Stephen Herndon
Jeff Just
Jenny Mann
Stephen Meier
Art Sierra
Jase Stefanski
Gayle Pederson
John Courson
Ed Fuchs
John Cassell
Phil Perry
Brandy Lopez
Mike Drake
Michelle Makita
Lesley Haskell
Kevin Rash
Mike McFadden
Jan Button-Minton
Valerie Vollbrecht
Fred Madonna
Paul Reich
Frank Noey
Robert Brown
Scott Gordon
Robert Boliard, and
Ken Savage.

*Gelow v. Central Pacific Mortgage, et al.*
*Case No. 2:07-CV-01988-LKK-KJM*

## DEFENDANTS' WITNESS LIST

John Courson
John Cassell
Ed Fuchs
Robert T. Boliard, C.P.A.
Kevin Rash

Vici Gordon
Stephen Herndon
Jeff Just
Art Sierra

Erik Fridley
Mark Gelow
Jenny Mann
Stephen Meier
Gayle Pederson
Jase Stefanski
Bruce Trout

*ATTACHMENT "B"*

| Document Number | Producing Party | Description | Document Date |
|---|---|---|---|
| 1 | Fridley | Employment agreement 04 and W2 Form 7/6/04 | 8/1/2004 |
| 2 | Fridley | 2007 Statement | Jan-Feb 2007 |
| 3 | Fridley | Branch Manager Agreement Ivanhoe 04 | 2004 |
| 4 | Fridley | Courson memo outsourcing Accounting 3-06 | 5/3/2006 |
| 5 | Fridley | Courson memo MMC RE TMS 2-14-07 | 2/14/2007 |
| 6 | Fridley | Courson Delay in funding 1/23/07 | 1/23/2007 |
| 7 | Fridley | CPM Employment Pack 7-23-06 | 7/3/2006 |
| 8 | Fridley | Ivanhoe employment agreement 04 | 8/1/2004 |
| 9 | Fridley | Final cls Loan Sept 06 | 9/30/2006 |
| 10 | Fridley | Memo Payroll issues 10/6/2006 | 10/6/2006 |
| 11 | Fridley | Memo Haskell Resignation | 2/21/2007 |
| 12 | Fridley | IM Memo Cassell Ivanhoe closure 2-27-07 | 2/27/2007 |
| 13 | Fridley | 2002 Ivanhoe Manager Aggreement | 10/8/2002 |
| 14 | Fridley | Ivanhoe Job discription | undated |
| 15 | Fridley | Coursen Memo MCC 1-11-07 | 1/11/2007 |
| 16 | Fridley | Memo 11-16-06 Bear Sterns changes | 11/16/2006 |
| 17 | Fridley | Memo CPM 12-18-06 EMC Policy Change | 12/18/2006 |
| 18 | Fridley | Memo CPM 12-19-06 Bear Sterns EMC follow-up | 12/19/2006 |
| 19 | Fridley | Memo CPM 2-21-07 EMC discontinue Bear Sterns | 2/21/2007 |
| 20 | Fridley | Memo coursen 4-20-06 Accounting - Boliard | 4/20/2006 |
| 21 | Fridley | Memo coursen 4-13-06 Rash Resignation | 4/13/2006 |
| 22 | Fridley | P&L Report Ending 1-31-07 | 1/31/2007 |
| 23 | Fridley | P&L Report Ending 12-31-06 | 12/31/2006 |
| 24 | Fridley | Loan Docs 2-2007 lost commis | 2/15/2007 |
| 25 | Fridley | Kellie Figur resignation email | 2/21/2006 |
| 26 | Fridley | Robert Brown Appointment Email 2-6-06 | 2/6/2006 |
| 27 | Fridley | Robert Brown Resigns Email 2-12-07 | 2/12/2007 |
| 28 | Fridley | John Cassell TMS merger Email 1-22-07 | 1/22/2007 |
| 29 | Fridley | Memo Coursrsen Boliard appointed | 4/13/2006 |
| 30 | Herndon | P&L March 06 | 1/31/2006 |
| 31 | Herndon | P&L Jan 06 | 1/31/2006 |
| 32 | Herndon | Branch Manager Aggrement 04 | 10/6/2004 |
| 33 | Herndon | Branch Manager Aggrement 1990 | 10/15/1990 |
| 34 | Herndon | Branch Manager Aggreement 1996 | 3/12/1996 |
| 35 | Herndon | P&L Dec 06 | 12/31/2006 |
| 36 | Herndon | P&L Oct 06 | 12/31/2006 |
| 37 | Herndon | P&L August 06 | 12/31/2006 |
| 38 | Herndon | P&L June 06 | 12/30/2006 |
| 39 | Herndon | GL April 06 Account Bal Report Jan - Dec 06 | 12/31/2006 |
| 40 | Herndon | GL Jan 06 Ac Bal Report Jan - Dec 05 | 12/31/2005 |
| 41 | Herndon | Coursen Employee Service Award 98 | 10/23/1998 |
| 42 | Herndon | Branch manager agreement 03 | 12/12/2003 |
| 43 | Herndon | Branch manager agreement 92 | 9/25/1992 |
| 44 | Herndon | P&L Jan 2007 Incl's detail posting and 2006 GL | 1/31/2007 |
| 45 | Herndon | P&L Nov 06 Incl's detail posts and GL | 11/30/2006 |
| 46 | Herndon | P&L Sept 06 Incl's Detail Posts and GL | 9/30/2006 |
| 47 | Herndon | P&L May - July 06 Incl's Detail Posts and GL | 7/31/2006 |
| 48 | Herndon | P&L May 06 Incl's Detail Posts and GL | 5/31/2006 |
| 49 | Herndon | Nov 06 P&L & GL AND POSTS | 11/60/06 |
| 50 | Herndon | Feb 06 P&L | 2/26/2006 |
| 51 | Mann | P&L Jan 06 Excel SS | 1/31/2006 |

Appendix B— Plaintiffs' Potential Exhibits          *ATTACHMENT  "C"*

| Document Number | Party | Description | Document Date |
|---|---|---|---|
| 52 | Mann | P&L Dec 05 Excel SS | 1/31/2005 |
| 53 | Mann | P&L -Final Dec 05 | 1/17/2006 |
| 54 | Mann | GL Report Jan 06 | 1/31/2006 |
| 55 | Mann | P&L Jan 06 | 1/31/2006 |
| 56 | Mann | GL Dec 05 | 1/17/2006 |
| 57 | Mann | P&L Feb 07 Incl's bounced CPM Checks signed by Coursen, this is the only Feb 07 P&L generated | 2/28/2007 |
| 58 | Meir | Coursen 5 year service award | 6-Jan |
| 59 | Meir | Branch Manager Emply Agreement 04 | 10/27/2004 |
| 60 | Meir | Letter confirming entitled to 100% of net profits - Rash | 3/14/2002 |
| 61 | Meir | Branch Manager Emply Agreement 03 | 12/18/2003 |
| 62 | Meir | Branch manager Emply Agreement 2000 | 5/30/2000 |
| 63 | Meir | Meno Courson - delay in funding loans | 1/23/2007 |
| 64 | Meir | Cassel Memo re closure and email from Brian Morrison to CMP and CC to everyone | 2/26/2007 |
| 65 | Meir | Addendum Sept 04 | 9/28/2004 |
| 66 | Meir | Meno Courson - CMP Closure | 2/27/2007 |
| 67 | Meir | Memo Courson - TMS Funding update | 2/26/2007 |
| 68 | Meir | Memo Courson - Lesley Haskell Resignation | 2/21/2007 |
| 69 | Sierra | Employment Contract & Mar-07 Loan report, Checks, Broker Agreement | 7/6/2006 |
| 70 | Stefanski | P&L Excel SS Feb 07 | 2/28/2007 |
| 71 | Stefanski | CPM Fee Schedule | undated |
| 72 | Stefanski | Branch Manager Agreement 05 | 10/24/2005 |
| 73 | Stefanski | Money Lost to CPM Excel SS | 7-Feb |
| 74 | Trout | Branch Manager Agreement 12/12/1991 | 12/12/1991 |
| 75 | Trout | Branch Manager Agreement 8/1/2004 | 8/1/2004 |
| 76 | Trout | P&L Sept 05 | 9/30/2005 |
| 77 | Trout | Branch Manager Agreement 7/24/04 | 7/24/2004 |
| 78 | Trout | Ivanhoe Job Discription | undated |
| 79 | Trout | Accounting Memo 5-3-06 | 5/3/2005 |
| 80 | Trout | Branch Manager Call-Feb 14 2007 | 2/14/2007 |
| 81 | Trout | Branch Memo - loan delays | 1/23/2007 |
| 82 | Trout | Cassell Brown resignes Ivanhoe | 2/23/2007 |
| 83 | Trout | Funding and Payroll Issues 10-30-06 | 10/30/2006 |
| 84 | Trout | Haskell Resignation Memo 02-21-07 | 2/21/2007 |
| 85 | Trout | HR CPM Who is staying after closure, payroll out of CA MAr 1 07 | 3/1/2007 |
| 86 | Trout | Kilian Email Accounting memo 5-3-06 | 5/3/2006 |
| 87 | Trout | Lilian Email 1-22-07 | 1/22/2007 |
| 88 | Trout | Mandatory Branch Manager Call-Jan 11 2007 | 1/22/2007 |
| 89 | Trout | Memo 06-048 Very Important Changes to Bear Stearns Products | 11/26/2006 |
| 90 | Trout | Memo 06-051 EMC Programs - Policy Change | 12/18/2006 |
| 91 | Trout | Memo 06-052 Bear Stearns EMC Changes | 12/19/2006 |
| 92 | Trout | Memo 07-008 EMC Bear Stearns Product | 2/21/2007 |

Appendix B— Plaintiffs' Potential Exhibits

| Document Number | Producing Party | Description | Document Date |
|---|---|---|---|
| 93 | Trout | memo from Cassell - managers trying to get money | 2/26/2007 |
| 94 | Trout | MEMORANDUM TO Rash resigns 4-16-06 | 4/16/2007 |
| 95 | Gordon | Broker fees Nov 04 - Sexton | 11/3/2004 |
| 96 | Gordon | Employee Med Plan | 4/6/2005 |
| 97 | Gordon | Med Plan Costs | 4/6/2005 |
| 98 | Gordon | Employee Life Plan | 3/17/2006 |
| 99 | Gordon | CPM Healthcare Plan 1 | 3/26/2006 |
| 100 | Gordon | CPM Healthcares Plan 2 | 6/1/2006 |
| 101 | Gordon | Nov 06 1st am statements on loan 4 | 11/28/2006 |
| 102 | Gordon | Dec 2006 1st Am statments on laon 3 | 12/22/2006 |
| 103 | Gordon | Jan 07 Humbolt Land title docs on sale 2 | 1/12/2007 |
| 104 | Gordon | Jan 16 2007 deposit $16K | 1/16/2007 |
| 105 | Gordon | Jan 07 expense recipts and payments | 1/17/2007 |
| 106 | Gordon | Jan 07 Humbolt Land title docs on sale | 1/25/2007 |
| 107 | Gordon | Nov 06 - Feb 07 expenses and payments | 1/31/2007 |
| 108 | Gordon | Jan 07 P&L | 1/31/2007 |
| 109 | Gordon | Feb 07 1st financial statements for loan | 2/7/2007 |
| 110 | Gordon | Dec 06 expenses and payments | 2/15/2007 |
| 111 | Gordon | Jan 07 expenses includes trip to CPM | 2/15/2007 |
| 112 | Gordon | Feb 07 expenses | 2/15/2007 |
| 113 | Gordon | Feb 16 2007 deposit $25K | 2/16/2007 |
| 114 | Gordon | Feb 22 2007 Ist Am statements on loan 2 | 2/22/2007 |
| 115 | Gordon | Feb 22 07 Request for Chks to CPM for A-Payable | 2/22/2007 |
| 116 | Gordon | Feb 26 07 memo Cassell - closure of Ivanhoe | 2/26/2007 |
| 117 | Gordon | Memo Cassell closing 2-26-07 and related emails | 2/26/2007 |
| 118 | Gordon | Memo courson closing 2-26-07 | 2/26/2007 |
| 119 | Gordon | Branch Payroll Feb 28 2007 | 2/28/2007 |
| 120 | Gordon | Funds to CPM $90K after CPM Closed - breakdown | 2/28/2007 |
| 121 | Gordon | Feb 2007 P&L | 2/28/2007 |
| 122 | Gordon | Payroll checks (2) March 07 | 3/1/2007 |
| 123 | Gordon | Mar 5 2007 Deposits and checks $25K | 3/5/2007 |
| 124 | Gordon | Mar 07 post closure accounst paid by client | 3/22/2007 |
| 125 | Gordon | CPM Branch Manager Agreement | undated |
| 126 | Gordon | Blank Deposits slips | undated |
| 127 | Gordon | CPM Employee Handbook | undated |
| 128 | Gordon | Email Log | |
| 129 | Gelow | April 01 P&L | 4/31/01 |
| 130 | Gelow | April 02 P&L | 4/31/02 |
| 131 | Gelow | April 03 P&L | 4/31/03 |
| 132 | Gelow | April 04 P&L | 4/31/04 |
| 133 | Gelow | April 06 P&L | 4/31/06 |

Appendix B— Plaintiffs' Potential Exhibits

| Document Number | Producing Party | Description | Document Date |
|---|---|---|---|
| 134 | Gelow | Aug 01 P&L | 8/30/2001 |
| 135 | Gelow | Aug 02 P&L | 8/30/2002 |
| 136 | Gelow | Aug 03 P&L | 8/30/2003 |
| 137 | Gelow | Aug 04 P&L | 8/30/2004 |
| 138 | Gelow | Aug 06 P&L | 8/30/2006 |
| 139 | Gelow | Dec 01 P&L | 12/31/2001 |
| 140 | Gelow | Dec 02 P&L | 12/31/2002 |
| 141 | Gelow | Dec 03 P&L | 12/31/2003 |
| 142 | Gelow | Dec 04 P&L | 12/31/2004 |
| 143 | Gelow | Dec 06 P&L | 12/31/2006 |
| 144 | Gelow | Feb 01 P&L | 2/28/2001 |
| 145 | Gelow | Feb 02 P&L | 2/28/2002 |
| 146 | Gelow | Feb 03 P&L | 2/28/2003 |
| 147 | Gelow | Feb 04 P&L | 2/28/2004 |
| 148 | Gelow | Feb 06 P&L | 2/28/2006 |
| 149 | Gelow | Jan 01 P&L | 1/31/2001 |
| 150 | Gelow | Jan 02 P&L | 1/31/2002 |
| 151 | Gelow | Jan 03 P&L | 1/31/2003 |
| 152 | Gelow | Jan 04 P&L | 1/31/2004 |
| 153 | Gelow | Jan 06 P&L | 1/31/2006 |
| 154 | Gelow | Jan 07 P&L | 1/31/2007 |
| 155 | Gelow | July 06 P&L | 7/31/2006 |
| 156 | Gelow | July 01 P&L | 7/31/2001 |
| 157 | Gelow | July 02 P&L | 7/31/2002 |
| 158 | Gelow | July 03 P&L | 7/31/2003 |
| 159 | Gelow | July 04 P&L | 7/31/2004 |
| 160 | Gelow | June 01 P&L | 6/30/2001 |
| 161 | Gelow | June 02 P&L | 6/30/2002 |
| 162 | Gelow | June 03 P&L | 6/30/2003 |
| 163 | Gelow | June 04 P&L | 6/30/2004 |
| 164 | Gelow | June 06 P&L | 6/30/2006 |
| 165 | Gelow | Mar 01 P&L | 3/31/2001 |
| 166 | Gelow | Mar 02 P&L | 3/31/2002 |
| 167 | Gelow | Mar 03 P&L | 3/31/2003 |
| 168 | Gelow | Mar 04 P&L | 3/31/2004 |
| 169 | Gelow | MAr 06 P&L | 3/31/2006 |
| 170 | Gelow | May 01 P&L | 5/1/2001 |
| 171 | Gelow | May 02 P&L | 5/1/2002 |
| 172 | Gelow | May 03 P&L | 5/1/2003 |
| 173 | Gelow | May 04 P&L | 5/1/2004 |
| 174 | Gelow | May 06 P&L | 5/1/2006 |

Appendix B— Plaintiffs' Potential Exhibits

| Document Number | Producing Party | Description | Document Date |
|---|---|---|---|
| 175 | Gelow | Nov 01 P&L | 11/30/2001 |
| 176 | Gelow | Nov 02 P&L | 11/30/2002 |
| 177 | Gelow | Nov 03 P&L | 11/30/2003 |
| 178 | Gelow | Nov 04 P&L | 11/30/2004 |
| 179 | Gelow | Nov 06 P&L | 11/30/2006 |
| 180 | Gelow | Oct 01 P&L | 10/31/2001 |
| 181 | Gelow | Oct 02 P&L | 10/31/2002 |
| 182 | Gelow | Oct 03 P&L | 10/31/2003 |
| 183 | Gelow | OCt 04 P&L | 10/31/2004 |
| 184 | Gelow | Oct 06 P&L | 11/31/06 |
| 185 | Gelow | Sep 01 P&L | 9/30/2001 |
| 186 | Gelow | Sep 02 P&L | 9/30/2002 |
| 187 | Gelow | Sep 03 P&L | 9/30/2003 |
| 188 | Gelow | Sep 06 P&L | 9/30/2006 |
| 189 | Gelow | Sep 04 P&L | 9/30/2004 |
| 190 | Gelow | CPM Finance and Administration Manual | |
| 191 | Just | Jan 31 2007 P&L | 1/31/2007 |
| 192 | Just | Feb 28 2007 P&L | 2/28/2007 |
| 193 | Just | Branch Agreement | 10/24/2004 |
| 194 | Pederson | Branch Account Bal 1-31-07 | 1/31/2007 |
| 195 | Pederson | Branch Agreement | 10/26/2004 |
| 196 | Pederson | Feb 26-07 P&L | 2/26/2007 |
| 197 | Pederson | Jan 31- 07 P&L | 1/31/2007 |
| 198 | All | Communications (emails and US Mail) from plaintiffs to CPM | |
| 199 | All | Communications (emails and US Mail) from CPM to plaintiffs | |
| 200 | CPM | CPM Balance Sheets and Financial Statements for 2004 though 2007 | |
| 201 | CPM | Monthly and Yearly Statements for branches (Profit & Loss) | |
| 202 | CPM | General Ledger Statements | |
| 203 | CPM | All other documents produced by CPM | |
| 204 | Plaintiffs | Declaration of Frank Noey | |
| 205 | Plaintiffs | Declaration of Paul Reich | |
| 206 | Plaintiffs | Declaration of Fred Madonna | |
| 207 | All | All other documents previously produced or identified by any party that have not been listed | |
| 208 | Plaintiffs | Depositions of Defendants | |
| 209 | Plaintiffs | Courson financial statements | |

Appendix B— Plaintiffs' Potential Exhibits

*Gelow v. Central Pacific Mortgage, et al.*
*Case No. 2:07-CV-01988-LKK-KJM*

## DEFENDANTS' EXHIBIT LIST

| Plaintiffs' No. | Defendants' Letter | Document | Plaintiff |
|---|---|---|---|
|  | A | General Ledger Detail Report – Branch 2327-215 | Herndon |
|  | B | General Ledger Detail Report – Branch 2305-363 | Gordon |
|  | C | General Ledger Detail Report – Branch 2327-499 | Just |
|  | D | General Ledger Detail Report – Branch 2327-581 | Sierra |
|  | E | General Ledger Detail Report – Branch 2327-154 | Fridley |
|  | F | General Ledger Detail Report – Branch 2327-252 | Gelow |
|  | G | General Ledger Detail Report – Branch 2327-123 | Mann |
|  | H | General Ledger Detail Report – Branch 2327-415 | Meier |
|  | I | General Ledger Detail Report – Branch 2327-212 | Pederson |

SC1 17107883.1

*ATTACHMENT "D"*

| Plaintiffs' No. | Defendants' Letter | Document | Plaintiff |
|---|---|---|---|
| | J | General Ledger Detail Report – Branch 2327-554 | Stefanski |
| | K | General Ledger Detail Report – Branch 2327-235 | Trout |
| | L | Announcement to Branch Mgrs re important company update, mandatory conference call for 1/11/07 | |
| | M | Announcement to Branch Mgrs re important company update conference call for 2/14/07 | |
| 6 36 | O | Memo from Courson re delay in funding loans | |
| 12 116 117 | P | Memo from Cassell re Ivanhoe closure | |
| 66 118 | Q | Memo from Courson re CPM closure | |
| 190 | R | CPM Finance and Administration Manual | |
| 32 | S | Branch Manager Agreement – 2004 | Herndon |

| Plaintiffs' No. | Defendants' Letter | Document | Plaintiff |
|---|---|---|---|
| 69 | T | Branch Manager Agreement – undated | Sierra |
| 193 | U | Branch Manager Agreement – 2004 | Just |
| 125 | V | Branch Manager Agreement – undated | Gordon |
| 127 | W | CPM Employee Handbook | Gordon |